# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **JENNIFER FLORIO,** | } |
| **Plaintiff,** | } |
| v. | } Case No.: 7:25-cv-00790-RDP |
| **HOME DEPOT,** | } |
| **Defendant.** | } |

## MEMORANDUM OPINION

This matter is before the court on Defendant Home Depot U.S.A., Inc.'s ("Home Depot") Motion to Dismiss Amended Complaint. (Doc. # 9). Plaintiff has not filed a response in opposition to Home Depot's Motion.[1] After careful review, and for the reasons discussed below, the Motion (Doc. # 9) is due to be granted.

**I.     Background**

On April 16, 2025, Plaintiff Jennifer Florio ("Plaintiff") filed this action *pro se* in the Circuit Court of Tuscaloosa County, Alabama. (Doc. # 1-1). On May 21, 2025, the case was removed to federal court. (Doc. # 1). Home Depot filed a Motion for a More Definite Statement. (Doc. # 6). After reviewing Plaintiff's Complaint and concluding that it was an impermissible shotgun pleading, the court ordered Plaintiff to file an Amended Complaint. (Doc. # 7). The court explicitly stated that Plaintiff's "Amended Complaint **SHALL** comply with Federal Rules of Civil Procedure 8, 10, and 11." (*Id.* at 3). It further stated:

---

[1] On July 11, 2025, Home Depot filed its Motion. (Doc. # 9). On July 15, 2025, the court issued an Order reminding the parties to brief the Motion in accordance with Exhibit B of the court's Initial Order. (Doc. # 11). Exhibit B of the court's Initial Order directs that a responsive brief to any non-summary judgment motion shall be filed no later than ten (10) days after the filing of the non-summary judgment motion. (Doc. # 10). Because the deadline for Plaintiff to file her response has passed, the court proceeds as if the Motion (Doc. # 9) has been fully briefed.

> The Amended Complaint must contain allegations of fact which support each discrete claim that Plaintiff asserts against Home Depot. Specifically, Plaintiff must separately set forth each claim she is making against Home Depot, in a short, plain statement, containing allegations of fact – the who, what, when, and where of the claim – and referencing the statute or law under which each separate claim is brought and the relief sought under each separate claim.

(*Id.*). The court also warned: "Failure to file an Amended Complaint as directed may result in this action being dismissed for failure to state a claim upon which relief can be granted or for want of prosecution." (*Id.*).

Plaintiff filed an Amended Complaint. (Doc. # 8). Subsequently, Home Depot filed its Motion to Dismiss Amended Complaint. (Doc. # 9).

Plaintiff's Amended Complaint asserts claims of emotional distress, intentional infliction of emotional distress, and negligent infliction of emotional distress, all arising out of her employment with Home Depot. (Doc. # 8). The relevant allegations of Plaintiff's Amended Complaint are summarized below.

Throughout 2024 to 2025, Plaintiff was employed as a customer service desk representative at Home Depot's Tuscaloosa store. (*Id.* ¶ 3). Throughout her employment with Home Depot, Plaintiff received "Homer badges," which are "given to associates who demonstrate [Home Depot's] core values." (*Id.* ¶¶ 4-5, 10-12).

On various occasions from May 27, 2024 through November 15, 2024, Plaintiff had a series of issues with customers. She alleges she "experienced insolent, verbally aggressive people" at "the customer service desk," which caused her to become "quiet, her anxiety increase[d] [, and] she was nervous of their unpredictableness." (*Id.* ¶¶ 3-9). For example, "[o]n one occasion, a female came to the service desk and immediately started slamming her items on the counter." (*Id.* ¶ 4). When this occurred, "Plaintiff didn't talk" but "[t]he female then looked at the Plaintiff in her face, got uncomfortably closer and called the Plaintiff weird." (*Id.*). Plaintiff, who was "visibly

2

shaking," went to find a store manager to ask for help. (*Id.*). Plaintiff claims that the store manager said "she needed to vape." (*Id.*). Plaintiff also alleges that on another occasion, she was chased by a customer while in the store. (*Id.* ¶ 9).

When these various interactions occurred at the customer service desk, Plaintiff would "try to call a manger or seek assistance for her own safety." (*Id.* ¶¶ 3-8). Plaintiff alleges that she was "forced to give the manager a 'run down' (over the phone while she was in reach of the aggressive person) of every single thing that transpired." (*Id.* ¶¶ 3-9). Plaintiff further alleges that a manager "would show up" at frequencies varying from "25% of the time" to "55% of the time." (*Id.* ¶¶ 3-9). According to Plaintiff, she "informed her supervisor . . . and other managers that the customer service desk was not an ideal place for her because of her mental disorders" and that "she was having headaches." (*Id.* ¶¶ 3-9). Plaintiff also "inquired about other sales department[] positions." (*Id.* ¶¶ 3-6).

Sometime in July 2024, Plaintiff "informed her medical practitioner that she was concerned [about] how [Home Depot's] Tuscaloosa store was impacting her health." (*Id.* ¶ 5).

In August 2024, Plaintiff "showed interest in a flooring position," but her supervisor and the store manager said that she couldn't do the job because of her nail extensions." (*Id.* ¶ 6). Plaintiff alleges that "there were two associates that actively worked in that department with longer nail extensions." (*Id.*). Plaintiff also expressed an interest in the kitchen design position after she saw that the "position was on [Home Depot's] website," but the store manager "said she wasn't hiring for that [position]." (*Id.*). Plaintiff alleges that an associate in the kitchen design department informed her that Home Depot was "actively seeking to fill the opening because an associate left the position." (*Id.*). Plaintiff applied to the flooring position. (*Id.*). Around this time, Plaintiff again

"informed her medical practitioner that she was concerned [about] how [Home Depot's] Tuscaloosa store was impacting her health." (*Id.*).

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on August 15, 2024. (Doc. # 1-2).

In September 2024, after Plaintiff again "experienced insolent, verbally aggressive people" at "the customer service desk," she "messaged [her] supervisor that she needed assistance." (Doc. # 8 ¶ 7). Plaintiff alleges that her supervisor "did not show up and did not send anyone in her place for assistance." (*Id.*). Around this time, Plaintiff again "informed her medical practitioner that she was concerned [about] how [Home Depot's] Tuscaloosa store was impacting her health." (*Id.*). Plaintiff also informed Home Depot's "store management and district [human resources ("HR")] representative] that she was having headaches." (*Id.*). According to Plaintiff, she received "IAP (Interactive Accommodation[] paperwork[)] from a manger and forwarded it to her medical practitioner." (*Id.*). Plaintiff alleges that sometime in September 2024, the "lead working at the service desk was watching pornography on her phone and showed [Plaintiff] the images." (*Id.*). Plaintiff claims that she was "nervous to speak up because the lead was close to the managers and supervisors, and the Plaintiff had negative interactions with the managers" and she was concerned that if she spoke up, she would be retaliated against. (*Id.*).

In October 2024, Plaintiff "messaged her supervisor" informing her that another associate was not allowing Plaintiff to take breaks, "that a desk worker would put her hand on top of the Plaintiff's [hand]" in an unwelcome way, and that Plaintiff "tried to avoid the worker because the worker constantly invaded her personal space." (*Id.* ¶ 8). Around this time, Plaintiff also reached out to Home Depot's district HR representative, informing the representative that "a manager aggressively slapped [Plaintiff's] hand on the service desk . . . [which] intimidated the Plaintiff

4

and made her feel unsafe." (*Id.*). According to Plaintiff, Home Depot's HR representative "stated that Plaintiff's IAP was not showing." (*Id.*). Plaintiff then "immediately sent the IAP to the HR representative and waited for confirmation." (*Id.*). Plaintiff alleges that Home Depot's Tuscaloosa store manager "stated in an aggressive tone that she did not like that the IAP forms were emailed to her." (*Id.*). Plaintiff further alleges that she had "asked [the] store manager several [times] to please email the forms so that she could forward them immediately to her medical practitioner and get them back to the store manager immediately." (*Id.*). During October 2024, Plaintiff again "informed her medical practitioner that she was concerned [about] how [Home Depot's] Tuscaloosa store was impacting her health." (*Id.*).

In November 2024, "Plaintiff expressed to her medical practitioner that the store manager made her feel uncomfortable" and that "when she told the store manager she was uncomfortable with her, the store manager continued to talk over the Plaintiff and violated [Home Depot's] respect policy." (*Id.* ¶ 9). Plaintiff alleges that her IAP forms stated that she would get unpaid breaks, which led Plaintiff to believe that she could leave the customer service desk unattended "which presented another unhandled issue." (*Id.*). Plaintiff also alleges that she did not have "a safe way to exit [the customer service desk] in order to take the IAP break." (*Id.*). Around this time, Plaintiff again expressed to Home Depot's district HR representative that she felt uncomfortable around the store manager. (*Id.*). According to Plaintiff, the store manager "stated in an aggressive tone to the Plaintiff that 'there's no way she would have allowed me to be at the service desk'" and that "[w]ithout warning" the store manager assigned Plaintiff to be an overnight freight worker, working 9 p.m. to 6 a.m. (*Id.*). Plaintiff claims that she stated "that the scheduling would not be good for her disorder." (*Id.*). According to Plaintiff, the store manager gave Plaintiff "a written final warning," which Plaintiff believed to be "a form of retaliation." (*Id.*).

5

In December 2024, Plaintiff "expressed to her medical practitioner that her quality of life [was] evaporating and that the actions of management [at Home Depot were] toxic." (*Id.* ¶ 10). She also told her medical practitioner "that she was placed overnight without her consent in a forced IAP[,] that she was concerned about her health[, and] she felt hopeless." (*Id.*). Plaintiff alleges that around this time, a manager at the store "constantly called the Plaintiff 'mama' when she addressed her." (*Id.*). Plaintiff expressed to the Home Depot district HR representative her need to tell the manager to stop. (*Id.*). Around this time, Plaintiff was also "concerned about more retaliation" after a manger told her she "[couldn't] be sitting on the clock" when she saw Plaintiff watching training videos. (*Id.*). Plaintiff also alleges that in December 2024, a "Plumbing department associate brushed [her] backside." (*Id.*) Plaintiff was "shaken" after this and told the associate that he was too close to her, which caused the associate to become angry at Plaintiff. (*Id.*).

In March 2025, the same plumbing department associate from December "began to antagonize" Plaintiff by standing close to her in the store aisle. (*Id.* ¶ 11). Plaintiff alleges that her complaints were not "registering concern from [Home Depot's] Tuscaloosa store leadership." (*Id.*). Plaintiff also alleges that around this time while she was working as a freight worker, a supervisor "would constantly use a[n] aggressive tone" with her and "humiliated the Plaintiff in front of other workers." (*Id.*).

In May 2025, Plaintiff noticed the store manager's "favoritism" towards three of her coworkers. (*Id.* ¶ 12). According to Plaintiff, she "did not want to mention anything" to Home Depot's district HR representative "out of concern for retaliation." (*Id.*).

In June 2025, Plaintiff expressed to the Night Operations Manager that she was "concerned about her safety regarding an incident that involved a plumbing worker" which "triggered [her]

6

emotions [while she] was in a frail mental state." (*Id.* ¶ 13). Later in June 2025, Home Depot's store manager called Plaintiff to terminate her employment. (*Id.*).

## II.     Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

When considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an

7

entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC,* 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

Complaints that tender "'naked assertion[s]' devoid of 'further factual enhancement'" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Stated differently, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556.

### III. Discussion

Again, Plaintiff's Amended Complaint asserts three causes of action: (1) Emotional Distress; (2) Intentional Infliction of Emotional Distress; and (3) Negligent Infliction of Emotional Distress. (Doc. # 8 at 9).

Home Depot asserts that Plaintiff's Amended Complaint should be dismissed in its entirety because (1) Alabama law does not recognize a cause of action for emotional distress or negligent infliction of emotional distress and (2) Plaintiff has not sufficiently alleged facts to plausibly support a claim for intentional infliction of emotional distress. (Doc. # 9). The court agrees with both arguments.

### A. Emotional Distress and Negligent Infliction of Emotional Distress

Under Alabama law, there is no cause of action for either emotional distress or negligent infliction of emotional distress. *See Pa. Nat. Mut. Cas. Ins. Co. v. Snider*, 607 F. App'x 879, 881 n.2 (11th Cir. 2015) ("Emotional distress and mental anguish are not causes of action but rather types of injury."); *Russell v. Ethicon Inc.*, 2020 WL 4732106, at *7 (N.D. Ala. Aug. 14, 2020) ("Alabama does not recognize a cause of action for negligent infliction of emotional distress.") (citing *Gideon v. Norfolk S. Corp.*, 633 So. 2d 453, 453-54 (Ala. 1994)). Accordingly, because these are not cognizable causes of action, Plaintiff's claims of emotional distress and negligent infliction of emotional distress are due to be dismissed.

### B. Intentional Infliction of Emotional Distress

In Alabama, the four elements of the tort of intentional infliction of emotional distress (which is sometimes referred to as the tort of outrage) are: (1) the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from his conduct; (2) the conduct was extreme and outrageous; (3) the defendant's action caused the plaintiff distress; and (4) that distress was severe. *Harris v. McDavid*, 553 So. 2d 567, 569-70 (Ala. 1989). The Supreme Court of Alabama has previously stated that this tort is an "extremely limited cause of action" that has been recognized in regard to only three kinds of conduct: (1) wrongful conduct in the family-burial context; (2) barbaric methods employed to coerce an insurance settlement; and (3) egregious sexual harassment. *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000) (internal citations omitted). Although the court has since clarified that these three circumstances are not necessarily exhaustive, *see Little v. Robinson*, 72 So. 3d 1168, 1172-73 (Ala. 2011), the court has remained clear that this tort "is viable only when the conduct is 'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be

9

regarded as atrocious and utterly intolerable in a civilized society.'" *Id.* at 1173 (quoting *Horne v. TGM Assocs., L.P.*, 56 So. 3d 615, 631 (Ala. 2010)). This tort is limited to instances of egregious circumstances. *Callens v. Jefferson Cnty. Nursing Home*, 769 So. 2d 273, 281 (Ala. 2000); *see also Am. Road Serv. Co. v. Inmon*, 394 So. 2d 361, 364-65 (Ala. 1980) ("mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" are not extreme and outrageous).

Accepting all of Plaintiff's allegations as true, the court concludes that Plaintiff has not shown that Home Depot's conduct "(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Green Tree Acceptance, Inc. v. Standridge*, 565 So. 2d 38, 44 (Ala. 1990). To be sure, Plaintiff has alleged various unpleasant and unprofessional – even improper – interactions with Home Depot personnel and customers. For example, she claims that Home Depot personnel did not adequately respond when she complained of "insolent, verbally aggressive people" while she was working at the customer service desk and customer interactions caused her anxiety to increase. (Doc. # 8 ¶¶ 3-9). She also claims that the store manager was unhappy with her about emailing IAP forms to her (*id.* ¶ 8) and referred to her as "mama" (*id.* ¶ 10), a coworker brushed her backside (*id.*), a lead was watching pornography rather than working (*id.* ¶ 7), and a night operations manager showed "favoritism" to three of her coworkers. (*Id.* ¶ 12). These occurrences, as troublous as they were, do not amount to "extreme and outrageous" conduct that would have "caused emotional distress so severe that no reasonable person could be expected to endure it[;]" rather, they are only mere workplace indignities, annoyances, and trivialities. *Green Tree Acceptance*, 565 So. 2d at 44; *Am. Road Serv.*, 394 So. 2d at 364-65.

To the extent that Plaintiff asserts that Home Depot did not provide her with reasonable disability accommodations because, for example, she did not have "a safe way to exit [the customer

10

service desk] in order to take the IAP break" (Doc. # 8 ¶ 9), this cannot support a claim for intentional infliction of emotional distress. *See Est. of Reed v. Ponder Enters., Inc.*, 2012 WL 1031487, at *8 (M.D. Ala. Mar. 27, 2012) (concluding that the defendants' conduct involving their failure to provide accommodations for the plaintiff did not "rise to the level of outrageousness that will support a claim for intentional infliction of emotional distress under Alabama law.")

For all these reasons, Plaintiff's intentional infliction of emotional distress claim is due to be dismissed.

### C.  Shotgun Pleading

Although Home Depot does not seek to dismiss Plaintiff's Amended Complaint on technical deficiencies (*see* Doc. # 9 at 2 n.1), the court concludes that Plaintiff's Amended Complaint remains an improper shotgun pleading.

After determining that Plaintiff's initial Complaint was a shotgun pleading, the court ordered Plaintiff to file an Amended Complaint that complies with Federal Rules of Civil Procedure 8, 10, and 11. (Doc. # 7 at 3). The court explicitly stated:

> The Amended Complaint must contain allegations of fact which support each discrete claim that Plaintiff asserts against Home Depot. Specifically, Plaintiff must separately set forth each claim she is making against Home Depot, in a short, plain statement, containing allegations of fact – the who, what, when, and where of the claim – and referencing the statute or law under which each separate claim is brought and the relief sought under each separate claim.

(*Id.*). Further, the court warned: "Failure to file an Amended Complaint as directed may result in this action being dismissed for failure to state a claim upon which relief can be granted or for want of prosecution." (*Id.*).

Plaintiff's Amended Complaint (much like her initial Complaint) contains a myriad of disconnected factual allegations and events that are not connected to any particular claim. Moreover, Plaintiff's claims appear at the end of the Amended Complaint, and do not contain "a

11

short, plain statement, containing allegations of fact." Accordingly, Plaintiff's Amended Complaint is a shotgun pleading. As the court previously stated, "[t]he unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sherriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). Because Plaintiff's allegations are not connected to any particular cause of action, her Amended Complaint does not give Home Depot or the court adequate notice of the grounds on which each claim rests. *Id.*

For these additional reasons, the court concludes that Plaintiff's Amended Complaint is due to be dismissed.

**IV.    Conclusion**

For all of the reasons outlined above, Home Depot's Motion to Dismiss Amended Complaint (Doc. # 9) is due to be granted. An order consistent with this memorandum opinion will be entered contemporaneously.

The Clerk of the Court is **DIRECTED** to forward a copy of this order to Plaintiff at her address of record.

**DONE** and **ORDERED** this August 11, 2025.

_____
**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE